PETER HALL v. ANDREW SNOWHILL.

*In an action on the case, the defendant, under the general issue, may give in evidence, any matter of excuse or justification, without pleading it specially; and hence he may show, that he seized the goods as sheriff, by virtue of a judgment and execution, and that the mortgage or bill of sale, under which the plaintiff claims, is fraudulent and void as against creditors.*

This action was commenced in the court of Common Pleas of the county of Middlesex, and was removed into this court after judgment upon demurrer, by writ of error. For the declaration filed by the plaintiff, the reader is referred to the case argued in this court in the term of May, 1833, page eight of this volume. The cause was tried at the Middlesex circuit, in the term of December, 1833, and a verdict rendered for the plaintiff. On the return of the postea, a rule to shew cause, why the verdict should not be set aside and a new trial had, was allowed. A statement of the evidence given on the trial, with a copy of the charge of the chief justice, who tried the cause, and the written argument of counsel, were submitted to the court. The whole of the evidence and charge is published, as presenting the most satisfactory view of the case.

To support the issue joined on his part, the plaintiff called

Hall *v.* Snowhill.

Joachim Morris, who being sworn, said, he was the subscribing witness to the mortgage, and saw George W. Hall and Charles C. Hall, sign and seal the same. The paper was then offered in evidence. Being cross-examined, he says that this paper was executed in New York; he understood at the time, that the goods were in a store at Piscataway, in New Jersey; but does not know how long they had been there. Peter Hall, the plaintiff, lived at Salem, in the state of New York. He was not present when the mortgage was executed; he was not in the city at the time. Witness did not see the mortgage delivered to Peter Hall; he left it with Charles C. and George W. Hall, at the time it was executed, and has never seen it since, until the present time. G. W. & C. C. Hall, kept a grocery store in the city of New York, at this time. They told witness that they had a store in Piscataway, in New Jersey; they had kept store in New York, a year and a half or two years.

William N. Smith, being sworn, said, that there were goods in his store at Piscataway, at the time of the date of the mortgage, which were claimed by C. C. & G. W. Hall, as their property, and sent there by them. After the date of the mortgage there were goods sold which were sent to the store by the Halls, from that date, up to the 2d, 3d or 4th of April. The goods were levied on by Mr. Priestly, and sold by the defendant, part of them on the premises, and the remainder at Mann's tavern, in New Brunswick: they were sold, he thinks, in May, and the amount of sales was about three hundred dollars. Being cross-examined, he says, the goods were brought to Piscataway about the month of December, 1831. C. C. & G. W. Hall, had not kept store there previously. The sign of witness was over the door. George Hall was there first, two or three weeks with witness, in the store, and then Charles came up, who was going backwards and forwards. The Halls brought up new account books; the books were kept in the name of Smith and Hall. There was no alteration in the mode of keeping them, after the paper was executed. Witness received so much per month as clerk in the store.

Charles C. Hall, a witness called on the part of the plaintiff, was objected to by the defendant, on the ground of his in-

terest. He is the grantor in the mortgage, mentioned in the declaration, and therein warrants the title to the said goods. Thereupon, the plaintiff executed and delivered a release as to the warranty, and the court permitted the witness to be sworn. Looking at the mortgage, the witness says, that he is one of the grantors. The mortgage, with the schedule annexed to it, was sent to the plaintiff two or three days after it was executed by the parties. It remained in his father's, (the plaintiff's,) possession, until it was sent to Brunswick, about five or six weeks. Witness is of opinion, that the schedule is pretty nearly correct as to the value of the goods; goods were sold at Piscataway, out of the store, which were in the schedule after the execution of the mortgage, to the amount of ten or fifteen dollars. The value of the goods seized by the sheriff, is little short of eight hundred dollars, if taken at the cost price. At the time Priestly took the goods, witness told him they were Peter Hall's. The goods were sent up to Piscataway, at the time of the first entry in the book, December 27th, 1830. The schedule was made out from books in the store at New York, and from inventory, and pretty much from memory. Witness had no account of sales at Piscataway, and made the schedule from memory. Had not previously dealt in dry goods, and was not a competent judge of them. The firm in Piscataway, commenced in the name of Smith and Hall, which continued about half the time that business was done in Piscataway; it was considered to be Charles C. and G. W. Hall. They bought Smith out, and the firm was then, G. W. and C. C. Hall.

In chief, he says that when the mortgage was executed, there was a debt fairly due from G. W. and C. C. Hall, to Peter Hall, of nine hundred dollars, for moneys borrowed by his brother and himself. Peter Hall held the note of witness for four hundred and twenty-five dollars, and his brother's, C. C. Hall's, for three hundred and fifty dollars; and there was due to him fifty or seventy dollars, for which there was no writing. The note of witness was dated 4th March, 1830, and his brother's note, March 1, 1829. He was subscribing witness to the note given by his brother, but did not see any money paid. The notes were produced; the first is dated October 4th, 1830, and the other in 1829. Witness' father, (the plaintiff,) got this money

Hall *v.* Snowhill.

from Mr. Burchel and Mr. Smith. The store in New York was discontinued two or three weeks before the goods were seized by the sheriff in Piscataway. Witness and his brother, went into business together in New York, about the 11th May 1830.

In answer to questions put by the court, the witness says, that the mortgage was drawn by a counsellor at law, on the same day it was executed. The schedule or invoice annexed to it, was made in the lawyer's office in New York, and made out altogether from memory by witness; he told over the items of the schedule to the lawyer, and the lawyer put them down. The mortgage was sent to his father by a younger brother. Between the date of the mortgage and the time of sending it to the plaintiff, sales were going on at the store as usual. At the time of the execution of the mortgage, no orders were issued to Smith at Piscataway, to suspend the sales. The sales made after the execution, were made by the permission of his father; but he is unable to say when that permission was given. When the mortgage was executed, the grocery store in New York was in operation and open, and continued open about a week after. The note given to his father, was not mentioned on the books at New York. His father demanded to be secured, as it was a critical case. He did not say how he would secure him, but told his father their situation, (that of his and his brother's) was doubtful; that they were young and inexperienced; had bad debts, and there were debts owing to them.

| | |
|---|---|
| The amount of goods sent to Piscataway, on the 5th December, 1830, was | $729 06 |
| The whole amount sent altogether, was | 1086 71 |
| Bought of Smith, | 85 00 |

Peter Hall, the plaintiff, did not at any time, come to New York about this period. Witness did not ask permission from his father, to sell these goods in Piscataway: he saw his father about a month or three or four weeks after this mortgage was executed. Bought out Smith about the 15th February.

Henry Burchel, being sworn, says, Peter Hall borrowed three hundred and seventy-five dollars from him, 5th October, 1830, and has paid it. Charles Hall received this money.

Hall *v.* Snowhill.

William H. Lupp, being sworn, says, that as agent of Peter Hall, he claimed the goods on the 9th of April, from Andrew Snowhill, the sheriff; sheriff delayed the sale. On the day of sale, witness showed the mortgage to the sheriff. Sheriff said, that if he was indemnified, he would sell, otherwise not.

James Dunham, being sworn, says, that he was present when the inventory was taken; Charles Hall said at that time, that the goods belonged to Peter Hall. If they meddled with them, they did so at their peril.

William H. Lupp, being again called, says, it was understood that Snowhill claimed the goods as sheriff, by virtue of an execution.

William N. Smith, being again called, says, that the entire amount of sales at Piscataway, after 27th December, 1830, was three hundred and thirty-three dollars and fifty-eight cents, profits and all. Two hundred and seventy-eight dollars and fifty-four cents, without profits. The books of the concern were not altered after he sold out to the Halls. Witness never heard of the mortgage from the Halls to their father until his return from New York.

The plaintiff having rested his cause, the defendant offered in evidence the judgment and execution of Oakford and Baldwin, against C. C. and G. W. Hall, under which execution they allege that these goods were taken. The evidence is objected to on the part of plaintiff, and overruled by the court.

The defendant then called

William B. Manning, who being sworn, says, that he dealt at this store in Piscataway. That he first dealt with Smith, then with Hall; saw Hall there but twice; there was an account presented to him for payment, which was first, in name of Smith and Hall; afterwards, he was prosecuted for the same account, in the name of Charles C. Hall; the goods purchased were from Smith's premises. The cause was summed up by counsel on both sides. Before leaving the bar, the court charged the jury as follows:

" First, the jury are to determine the issue between the parties. If they find that issue in favor of the plaintiff, then, secondly, they are to assess the damages; or in other words, to

ascertain the amount of injury done by the defendant to the plaintiff's reversionary interest in the goods taken by the defendant.

I. The issue. The plaintiff alleges that on a certain day, he had title as mortgagee, to certain goods and merchandize specifically mentioned; that by the terms of the mortgage, the mortgagors, who are his sons, should remain in the quiet and peaceable possession and enjoyment of them, for one year from the date of the mortgage; at the expiration of which time, if the debt thereby intended to be secured, should remain unpaid, he, the plaintiff, should have a right to take possession of the goods, &c. to sell them, pay himself, and return the surplus, if any, to the mortgagors; that before the expiration of the year, while he was thus out of possession, and before his right of actual possession accrued, the defendant wrongfully took the goods, &c. out of the possession of the mortgagors, and converted them to his own use; to the injury of his, the plaintiff's, reversionary right and interest in the same. To this declaration or complaint, the defendant has pleaded, that he is not guilty, in manner and form, &c. By this plea, the defendant denies not only the taking and converting the goods mentioned in the declaration, but every material allegation contained therein; he denies the plaintiff's title, and his whole right and injury stated and complained of. This plea throws the whole burden of proof on the plaintiff. He must prove the material allegations contained in his declaration, to the satisfaction of the jury, or he cannot recover. What then, must he prove?

First, the execution of the deed of mortgage set out in his declaration. The execution of a deed, includes the signing, sealing and delivery of it. Of the two first, the signing and sealing, there is direct proof, which, if you believe, will satisfy you of those particulars. But the subscribing witness proves no delivery of the deed. He does not know what became of it, after he signed it as a witness. It was at the store of the mortgagors in New York. Nor is any act or thing proved to have taken place at that time amounting to a delivery; and if we had heard no more of it, the plaintiff must have failed. But the witness, Hall, one of the mortgagors, says, the deed was sent

Hall v. Snowhill.

to his father by a younger brother, two or three days afterwards. There is no evidence of any agreement between the father and sons that they should make such a mortgage to him, nor any express evidence of the time that it passed into his hands. But he brings it into court, is now in possession of it, and claims under it; and although there is no direct evidence, that he ever received and accepted it as a deed, yet the evidence I have adverted to, is sufficient to go to the jury, and they may lawfully infer and find from the facts stated, that the deed was delivered to the plaintiff, and assented to and accepted by him. If the jury are satisfied that the deed was executed and delivered by the makers of it to the plaintiff then,

Secondly, the plaintiff must prove that the identical goods or some of them named and described in the mortgage in the declaration, were in existence, in the situation specified in the declaration. It must be remembered that this is not an action to recover eight hundred dollars worth of goods, but to recover damages for taking away and converting certain specific goods, particularly named, to the injury of the plaintiff's reversionary interest therein or right thereto.

Here the evidence of Charles C. Hall, as to the quantity, description and identity of the goods was adverted to. Now it is for the jury to decide, whether this testimony establishes the facts whether the identical goods mentioned in the mortgage, were in the store in Piscataway, when the mortgage was made, and whether those same goods, or any part of them were taken by the defendant; because the plaintiff has no right or title to any other goods than those specified in the mortgage. The plaintiff has proved that about one thousand dollars worth of goods were purchased by his sons and sent to the store at Piscataway, in four or five different parcels and at different times. But that is not enough. The plaintiff must satisfy the jury that the precise goods mentioned in the mortgage, were in the store, and that they or some of them were taken by the defendant; because if defendant took other goods, he is liable to somebody else for taking them. If the jury are satisfied upon this point, the plaintiff must show

Thirdly, that his right or interest in those goods was not in actual possession, but in reversion only. For although he had

Hall *v.* Snowhill.

no right to take possession, until the expiration of the year, yet if the mortgagors yielded up the possession to him, and he accepted it, he had possession, and if he had possession, then he cannot maintain this action. His remedy would be of another kind. The jury have heard the evidence on this point, and they must determine. (Here the testimony as to the sale of the goods from day to day by mortgagors as the agents of, or at the request of their father, &c. was adverted to.) I will only add, on this point, that it was not necessary the plaintiff should be personally present, in order to have possession. If the mortgagors yielded the store up to him, and to his control, and became his clerks or agents to make sales, &c. it was his possession not theirs. If the jury find the plaintiff not in possession, but entitled to a reversionary right, then the plaintiff must prove

Fourthly, that the defendant took and converted the goods, or some of them mentioned in the mortgage ; and if you are satisfied he did so, then the next duty of the jury will be to assess the plaintiff's damages.

If this was an action of trespass or trover, the measure of the damages, generally speaking, would be the value of the property taken and converted. But the novelty, or unusual nature of this action, leaves me in some doubt as to the proper rule by which damages ought to be assessed. If plaintiff had been the absolute owner of the property, and at all events, entitled to the possession in reversion, as for instance, if he had owned a horse and hired him out for a month or year, or had rented out a ready furnished house, and the horse or the furniture had been converted in the mean time, I should have less difficulty. But in this case, the plaintiff's right of *reversion* was, when the injury was committed, and when this action was commenced, contingent and uncertain, or rather it was liable to be defeated or terminated by payment of the debts intended to be secured. If the plaintiff has been paid that debt by his sons, it is plain that he has not been injured. But there is no evidence the debt has been paid, and in the absence of proof to the contrary, it must be presumed unpaid. Yet the question remains, what damage did it do the plaintiff, when the goods were taken by the defendant? That he would ever have occa-

Hall *v.* Snowhill.

sion to take possession of the goods in payment of his debt was at that time uncertain : the lapse of time has brought around the period, when the plaintiff's right to take possession of them, has become complete, by the non-payment of the money ; but they are not now in his reach. His actual injury or damage now, as things have turned out, is much greater than it was when the goods were taken. Suppose then this cause had not only been commenced, as it was, before the year expired, but had also been tried, before the contingency happened, which entitled the plaintiff to take possession of the goods ; what then would have been the measure of the damages ; I am bound to give the jury a rule, and as at present advised, I think that rule is, the fair value of the goods at the time they were taken. If I am wrong in this, I am happy that my error can be corrected.

In estimating the value, the jury are not to be limited by the amount for which defendant sold them, unless he has proved that they sold for their value. The first cost, making just allowance, for any depreciation in price since the purchase, or for any increase of value that has taken place, is the proper rule for estimating the value.

I do not know, that I have aided the jury in their inquiries, but have endeavoured to place before them the different matters upon which they must decide and leave them to apply the evidence to the law as I have stated it. I will only add, that whether the mortgage was a fair business transaction, or whether it was a collusive and fraudulent conveyance between father and sons to defraud their creditor, can make no difference in this case. The defendant, under the plea of not guilty, cannot excuse or justify himself on that ground. If he had justified the taking as sheriff, by virtue of an execution in his hands, it would have presented a different case for the consideration of the court and jury."

*Lupp*, for plaintiff.

*C. L. Hardenburgh*, for defendant.

At this term the following opinions were delivered.

FORD, J. In an action on the case for an injury to the plaintiff's reversionary interest, in goods left with Charles and George Hall, for a year, and seized and sold by the defendant as sheriff,

within that time, the case appeared to be as follows: Charles and George Hall, being the owners of a shop of goods at Piscataway, mortgaged them to their father Peter Hall the plaintiff, to secure payment of a debt of nine hundred dollars to him in a year; until the expiration of which time, they, the mortgagors, were to keep the goods in possession, and if the debt should remain unpaid till the end of the year, the plaintiff might then seize the goods wheresoever they were to be found and sell them to pay his debt and expenses of sale, returning the overplus to Charles and George Hall, if any there should be. For several days after giving the said mortgage, Charles and George Hall sold goods, out of this store, to customers, by retail, as usual; and in three or four weeks after the mortgage had been executed, the plaintiff gave them direct permission to sell the goods without any restriction, limitation or condition, as to the application of the money, and unknown to any body, for all that appears, but the parties to the permission. Charles and George Hall were indebted so largely to other creditors, that their solvency was a doubtful and critical matter when the mortgage was executed, and it covered all their property, for aught that appears to the contrary, including even their household furniture. The defendant first demurred to the declaration on this instrument, as being fraudulent on the face of it; but the court said it was valid between the parties to it, and if it was void against *credi-tors*, the defendant should not have demurred, but should have shewn it in a plea, that is, in a proper plea, not saying *what* it should be. Upon liberty to amend, the defendant pleaded the *general issue*. When the cause came to trial it appeared, that the firm of Oakfield & Baldwin, who were judgment creditors of Charles and George Hall, at the time the mortgage was executed, soon afterwards sued out an execution thereon, and delivered it to Andrew Snowhill the sheriff, to be executed, who seized the goods in question, by virtue thereof, and sold them to make the debt. The defendant offered the judgment and execution in evidence, *in justification* of the seizure of the goods: but, the plaintiff's counsel insisting that the judgment and execution were not admissible evidence under the general issue, but ought to have been specially pleaded, they were overruled; whereby the validity of the mortgage as against creditors was shut out

of view, and the sheriff standing in the light of a mere wilful trespassor, the jury found a verdict against him for the full value of the goods.

This action differs altogether from an action of *trespass* for taking the *plaintiff's* goods, for they were not to be *his* goods till the end of the year ; it is an action *on the case* for mal-feasance in respect of an interest which the plaintiff might lose in the reversion of the goods at a future day ; and being only an action *on the case*, the books say with one voice, that the defendant under the general issue, may give in evidence any matter of excuse or justification, without pleading it specially ; they liken it to a bill in equity, where no equitable defence can be excluded. Bacon says expressly, " that in every action on the case where the matter confesses and avoids the cause of action, it may be given in evidence." *Bac. Ab. Plead. G. 3.* Comyns says, " that in case, on the general issue pleaded, *any thing* may be given in evidence that will destroy the plaintiff's action." *Com. Dig. Plead. E.* 13. Tidd is no less explicit. *Tidd's prac.* 204, *cap.* 27, *Dub. edit.* of 1796. Chitty is to the same effect. 1 *Chit. Plead.* 432, *Philad. edit. of* 1828. Judge Gould, says that, " in this comprehensive class, (of actions on the case) whether arising *ex contractu* or *ex delicto*, many defences which go merely *in avoidance* of the declaration, have been admitted under the general issue." *Gould. Plead.* 329, *sec.* 46 and 47. In *Lord Bernard* v. *Saul,* 1 *Stra.* 498, *in assumpsit,* the defendant was allowed to *give in evidence* an usurious contract. In 2 *Stra.* 872, *Slater* v. *Swan,* Chief Justice Raymond allowed him, in *an action on the case,* to give in evidence, under not guilty, a justification for beating the plaintiff's horse. In the case of *Bird* v. *Randale,* 3 *Burr.* 1353, Lord Mansfield takes in the preceding doctrine at large ; " that in an *action on the case,* any thing may be given in evidence under the general issue, that will bar the plaintiff's recovery ; as a former recovery, release, satisfaction, custom of London, right of common, or any justification or excuse."

On what ground does the plaintiff's counsel hope to avoid the concurrent weight of these writers and adjudged cases ? He argues that this is really in its nature, an action of trespass, and in *name* only, an action on the case. Now, names distinguish actions from one another, with great accuracy, in law, and

an admission that it is termed in the writ and declaration, an *action on the case,* subjects it to all the rules in the foregoing decisions. If this action is, as the plaintiff alleges, really and in its nature, an action of *trespass,* it would not lie, and there ought to be a nonsuit ; for the plaintiff had not the goods in possession, nor even a *right* of possession during the year. All the claim set up in the declaration is to a *reversion.* In the mean time, the possession and right of possession were out ot him by his own agreement. I do not mean to say that his subsequent permission to those having actual possession, to sell the goods out and out, divested all his interest, though if they had sold them by his permission, it would seem to have annihilated even his residuary right to goods so sold. Neither is it necessary to consider at present, whether, if the two sons had a general and unlimited power of sale for their own use, the law officer, as their legal deputy, could not sell in their names and powers, for the payment of their just debts. When the law officer sells lands of any debtor, he makes just as good a deed as if the debtor had made it himself. If the mortgage *intended* to fix them in possession, *with full dominion* over the property, and only to paralize the arm of the law, and of valid executions, it may raise a serious question ; but my present aim is only to shew that there is no circumstance about the case entitling the plaintiff to maintain *trespass* in name or substance. This distinction between trespass and case, is interesting to both the parties, especially to the sheriff, for on a recovery against him *in trespass,* the goods would have become his own, " *transit rem in judicatum.*" It is also interesting to the plaintiff, if, after a recovery of full value in an action that does not pass the goods, he can still question the title of purchasers in an action of trover. Not only in *name,* but in all its important bearings, this was an action in case, that entitled the defendant's evidence to be received ; and for this reason I think there ought to be a new trial. It will also enable this instrument which is *sui generis,* and rightly called a new invention, to be fully considered. Let the rule be made absolute for a new trial.

HORNBLOWER, C. J. This is a special action of trespass on the case, brought by the plaintiff against the defendant for

Hall *v.* Snowhill.

taking out of the possession of two persons named Charles Hall and George Hall, certain goods and chattels, and for selling and converting the same to his own use, to the injury of the plaintiff's *reversionary right and interest* in those goods, under a contract between the plaintiff and the said Charles Hall and George Hall.

The defendant pleaded not guilty, and on the trial, offered to shew that he had taken and sold the goods as sheriff of the county of Middlesex, under and by virtue of an execution directed to him, out of the Court of Common Pleas of that county, against the said Charles Hall and George Hall, and the defendant further offered to shew, that the bill of sale or mortgage under which the plaintiff claimed a reversionary interest in the goods, was fraudulent, and void as against creditors.

This evidence was rejected, on the ground that the defendant could not be permitted under the general issue, to justify the taking, or enter into the question of fraud. Not only so, but it was given in charge to the jury, that however false and fradulent they might believe the transaction to be, as respected the creditors of Charles Hall and George Hall, yet as between the plaintiff and this defendant, they must consider the bill of sale as valid and conclusive, inasmuch as the defendant had not by his plea justified the taking as sheriff under an execution.

In all this, I am satisfied, I was wrong and had overlooked the broad and rational distinction, between a special action on the case, and an action of trespass *de bonis asportatis*. In the latter case, the action is founded on the right of property or at least of possession, and the plaintiff claiming *title* to goods under a voluntary bill of sale, has a right to retain them not only against the donor, but against all other persons except creditors. Hence it becomes necessary for a defendant in such case, to show himself a creditor or acting in behalf of a creditor, who has a right to question the bona fides of the transaction. Whereas, a special action on the case, in which the plaintiff seeks to recover damages for some incidental injury he has sustained, is in the nature of a bill in equity, and being so, is open upon the general issue of every equitable defence. If the plaintiff is entitled to recover, it is upon *the special circumstances* of his case, and not for any *trespass* done by the defendant, to his person

or his property ; nor for any direct attack upon his rights or his possession. Consequently, upon the general issue, the defendant may give in evidence, by way of justification or protection, any thing and every thing which shew, that *the special* circumstances of the case are such, that *ex æquo et bono*, the plaintiff ought not to recover. The authorities cited by Mr. Justice Ford, in the opinion just delivered by him, are conclusive upon this point. The verdict must be set aside and a new trial granted. The costs to abide the event of the suit.

*Ryerson,* J. concurred.

New trial granted.